# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4095 | **DATE** | 2/12/2002 |
| **CASE TITLE** | Robert Antonson vs. United Armored Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: United's Motion for Summary Judgment is granted and the case is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | FEB 13 2002 | |
| | Notices mailed by judge's staff. | | date docketed | 35 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 FEB 13 AM 7:51 | | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
FEB 12 2002
Judge Harry D. Leinenweber
U.S. District Court

ROBERT ANTONSON,

    Plaintiff,

v.

UNITED ARMORED SERVICES, INC.,

    Defendant.

Case No. 00 C 4095

Hon. Harry D. Leinenweber

DOCKETED
FEB 13 2002

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant United Armored Services' ("United") Motion for Summary Judgment and Motion to Strike portions of Plaintiff's First and Second Affidavits, his Local Rule 56.1(b)(3)(B) Statement of Additional Facts, his Local Rule 56.1(b)(3)(A) Response to Defendant's Statement of Material Facts and all of the exhibits Plaintiff submitted in response to United's Motion for Summary Judgment.

### BACKGROUND

From 1995 until his termination on August 9, 1999, Robert Antonson ("Antonson") was employed by United Armored Services as an ATM technician. Antonson, a native of Romania, alleges that he was harassed on the basis of his national origin, mainly in the form of verbal slurs, during the entire period of his employment with United. On August 15, 1997, Antonson sent a memo to United's Board of Directors containing a litany of allegations against countless co-workers. The memo complains of everything from sexual

harassment, taunts and slurs based on his national origin, unequal scheduling, failure to promote and other indignities too numerous to detail here. Four months later, in December of 1997, Antonson applied for a promotion to the position of ATM Operations Manager. Antonson was denied the promotion. The position was instead given to another United employee, Rick Salo. On May 14, 1998, Antonson filed a charge with the Illinois Department of Human Rights (the "IDHR") alleging that United's failure to promote him to the position of ATM Operations Manager was in retaliation for the opposition to national origin discrimination he expressed in his 1997 memo to United's Board of Directors.

Later, in the summer of 1999, United became aware of discrepancies in Antonson's time sheets. Following an investigation confirming the company's suspicions, Antonson was terminated on August 9, 1999 for allegedly falsifying his time sheets in violation of company policy. Then, on September 13, 1999, Antonson filed another charge with the IDHR, this time alleging that, in retaliation for the filing of his first IDHR charge, he was subjected to unequal scheduling, harassment, and eventual discharge; all in violation of Title VII. On July 7, 2000, Antonson filed his Complaint with this Court alleging retaliatory failure to promote, harassment, unequal scheduling and discharge in violation of Title VII (Count I), Intentional Infliction of Emotional Distress (Count II), Negligent Supervision

(Count III), and Breach of Contract (Count IV). Before the Court are the United's Motion to Strike and Motion for Summary Judgment. The Court will first address United's Motion to Strike.

## MOTION TO STRIKE

United moves to strike portions of Plaintiff's First and Second Affidavits, his Local Rule 56.1(b)(3)(B) Statement of Additional Facts, his Local Rule 56.1(b)(3)(A) Response to Defendant's Statement of Material Facts and all of the exhibits Antonson submitted in response to United's Motion for Summary Judgment. This motion is unnecessary since, even if the Court considered all of Antonson's material that United now seeks to strike, the Court's holding in this case would not change. Nevertheless, in reaching its ruling, the Court has disregarded all irrelevant, conclusory or inadmissable portions of Antonson's affidavits, exhibits, and Local Rule 56.1 submissions.

## MOTION FOR SUMMARY JUDGMENT

### Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's

favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### COUNT I - NATIONAL ORIGIN DISCRIMINATION

The exact nature of Antonson's claim is not entirely clear from the face of the Complaint. Based on the more coherent presentation of the allegations contained in the IDHR charges, Count I seems to allege retaliatory denial of promotion stemming from Antonson's complaints of discrimination to United's Board of Directors and retaliatory harassment, unequal scheduling and discharge for the filing of his first IDHR charge, all in violation of Title VII. Any other purported Title VII violations in Count I were not raised in Antonson's IDHR charge and may not be raised before the Court at this time. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985).

Under Title VII, an employer is prohibited from retaliating against employees who oppose unlawful employment practices or participate in any charge or investigation under the Act. 42 U.S.C. § 2000e-3(a). Since Antonson concedes that there is no direct evidence of retaliation, Antonson must establish his claims through the familiar *McDonnell-Douglas* burden-shifting analysis. Under this analysis, Antonson bears the initial burden of establishing a *prima facie* case of retaliation. To survive summary judgment, Antonson must demonstrate: (1) that he engaged in protected activity under Title VII; (2) that he suffered an adverse employment action subsequent to engaging in a protected activity; and (3) there exists a causal connection between the adverse employment action and his participation in the protected activity. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 479 (7th Cir. 1995). Even if Antonson establishes a *prima facie* case, there is no Title VII violation if United can articulate a legitimate, non-discriminatory reason for the employment action and Antonson produces no evidence that the articulated reason for the action is a mere pretext, a lie specifically designed to mask the true retaliatory purpose for the unlawful employment action. *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001).

In order to demonstrate the causal connection necessary for a *prima facie* case, the plaintiff must demonstrate that the employer

would not have taken the adverse employment action "but for" the protected expression. *Johnson*, 70 F.3d at 479. In the Seventh Circuit, it is a well-established principle of Title VII case law that a substantial time lapse between the protected expression and an adverse action is counter-evidence of any causal connection between the two. *Id.* at 480. For temporal proximity between an employer's knowledge of a protected activity and an adverse employment action to create a genuine issue as to causality, the temporal proximity must be very close. *Clark County v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001)(*per curiam*). Because the inference of causation weakens as the time between the protected expression and the adverse action increases, additional proof of a causal nexus then becomes necessary. *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001). In light of these requirements, Antonson asserts four separate retaliatory actions which the Court will address in turn.

**Retaliatory Failure to Promote**

First, Antonson asserts that United failed to promote him in retaliation for the memo Antonson sent to United's Board of Directors on August 15, 1997. However, the alleged retaliatory failure to promote did not occur until December 1997. Given that four months passed between the protected expression and the failure to promote, and that Antonson provides no additional proof tending to establish a causal nexus between the two events, he has failed

to establish a *prima facie* case of retaliatory failure to promote. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (holding that four months is too long to establish required causal nexus). Also fatal to Antonson's claim of retaliatory failure to promote is his inability to rebut United's articulated bases for its decision to promote another employee over Antonson. United offers several non-discriminatory reasons for its decision to promote Rick Salo rather than Mr. Antonson to the position of Operations Manager in December 1997. Among the factors cited by United in promoting Salo over Antonson were Mr. Salo's greater experience with the company (22 years as compared to Antonson's 3 years), Mr. Salo's perceived greater ability to establish collegial relationships with co-workers and professional relationships with clients, and Mr. Salo's greater technical expertise stemming from his long experience with the company. United also points out that, although Antonson possessed a college degree, many of United's operations managers and supervisors lacked undergraduate degrees and having such a degree had never been a controlling factor in hiring and promotion decisions in operations at United. Apart from his own self-appraisal and the fact that he had received at least one positive performance appraisal in 1997, Antonson points to nothing in the record that would cast material doubt on the legitimacy of the non-retaliatory reasons provided by

United for choosing Salo over Antonson for the promotion in December 1997.

**Retaliatory Harassment**

Antonson next asserts harassment in retaliation for the charge of retaliatory failure to promote that he filed with the IDHR on May 14, 1998. The harassment Antonson alleges did not occur until the period of March 1999 through August 1999. Again, due to the length of time separating the protected activity and the alleged acts of harassment, combined with the absence of other proof of retaliatory intent, Antonson fails to establish a causal nexus between the protected act and the alleged harassment. Additionally, the acts complained are far too insignificant to rise to the level of "adverse employment actions." Antonson complains of being yelled at on one occasion by a co-worker, being asked for a doctor's note after calling in sick eleven days in six months, and being loudly cursed at by his supervisor Kent Holmer after Antonson refused to give a written incident report following a complaint by one of United's largest customers. While these events certainly left Antonson disgruntled, that alone is insufficient to establish an adverse employment action. *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). To be actionable retaliatory harassment, the complained of employment action must generally represent a significant change in employment status such as firing, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits. *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 555 (7th Cir. 2000). The actions complained of here are clearly not of this kind. Accordingly, Antonson's claim of retaliatory harassment fails for failure to establish a causal nexus and failure to establish any actionable adverse employment action.

### Retaliatory Unequal Scheduling

Antonson next alleges unequal scheduling during several months in 1999 in retaliation for the filing of the IDHR charge in May 1998. The exhibit that Antonson himself submitted demonstrates that several other employees were also occasionally scheduled for seven-day work weeks like Antonson. Additionally, United points to the uncontested deposition testimony of Eva Parsi that approximately 20 of the 30 employees reporting to her between February 1999 and August 1999 were, like Mr. Antonson, sometimes scheduled to work seven consecutive days. Considering these facts along with the lack of a temporal nexus between the alleged retaliatory scheduling and the filing of the IDHR charge, it is clear that Antonson fails to establish a *prima facie* case of retaliatory unequal scheduling.

### Retaliatory Discharge

Finally, Antonson asserts that his discharge on August 9, 1999 was in retaliation for his IDHR charge of May 1998. As with his other claims, the lack of a temporal nexus combined with the

absence of any other proof of retaliatory animus prevent Antonson from establishing the causal connection necessary to maintain a *prima facie* case of retaliatory discharge. Additionally, even if Antonson could establish a *prima facie* case of retaliatory discharge, he offers no compelling evidence to rebut the legitimate reasons offered by United for the decision to discharge him. United provides substantial facts from the record supporting their articulated reasons for terminating Antonson. United has established that they maintained a policy prohibiting the falsification of time sheets, that United believed, due to inconsistencies reported by other drivers, that Antonson may have falsified his time sheets from May 1999 through July 1999, and that, on July 22, 1999, Mr. Salo and Ms. Parsi conducted surveillance of Antonson to determine if his whereabouts matched the reported activity on his time sheets. The record also indicates that two other individuals were terminated for falsification of time sheets in the year preceding Antonson's discharge and that another employee was terminated for similar behavior subsequent to Antonson's termination. Other than his own self-serving affidavits, Antonson offers nothing to cast any material doubt on United's reasons for firing him or to suggest that he had indeed done the work he indicated on his time sheet. The Seventh Circuit has repeatedly held that self-serving affidavits without factual support in the record will not defeat a

motion for summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). As with his other claims of retaliation, Antonson has failed to provide sufficient support for a *prima facie* case and failed to offer a serious challenge to the legitimacy of United's articulated reasons for its actions.

### COUNT II - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Counts II and III Antonson asserts claims under Illinois law for intentional infliction of emotional distress and negligent supervision. Antonson's Complaint provides no time frame for the tortious activity, simply referring in both instances to "national origin slurs and associated work-related harassment over a period of [time]." Governed by Illinois tort law, both of Antonson's claims are subject to a two-year statute of limitations. *Parks v. Kownacki*, 737 N.E.2d 287, 295 (Ill. 2000). Antonson filed his Complaint on July 7, 2000. Accordingly, since this is not a case where the alleged injury was indefinite or undiscoverable, any incidents occurring before July 7, 1998 are time-barred and the Court will only consider incidents occurring after that date.

Based on the record before the Court, this would leave five distinct incidents which might form the basis for Antonson's allegations of intentional infliction of emotional distress and negligent supervision: (1) Antonson being scheduled to work seven days in a row several times between February and August 1999; (2) Kent Holmer shouting at Antonson when Antonson refused to prepare

- 11 -

a written incident report following a complaint made by one of United's largest customers; (3) a request that Antonson have a doctor certify his return to work following his eleventh absence in six months; (4) a United employee shouting at Antonson when he refused to take any car other than his normally assigned vehicle; and (5) Antonson's termination on August 9, 1999 for falsification of his time sheets.

A threshold issue for any plaintiff pursuing a claim of intentional infliction of emotional distress is that they must have been subjected to "extreme and outrageous conduct." *McGrath v. Fahey*, 713 N.E.2d 806, 809 (Ill. 1988). Additionally, Illinois courts are generally hesitant to find intentional infliction of emotional distress in the employment context out of concern that, if everyday job stress resulting from personality conflicts, discipline and other employment actions gave rise to an action for infliction of emotional distress, every employee in the state would have a valid cause of action. *Vickers v. Abbott Laboratories*, 719 N.E.2d 1101, 1115 (Ill. 1999). Accordingly, under Illinois law, "[l]iability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not actionable

as intentional infliction of emotional distress. *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). The conduct alleged by Antonson clearly falls within the sphere of non-actionable indignities, annoyances and petty oppressions. They are not, as a matter of law, so extreme and outrageous as to form the basis of a claim for intentional infliction of emotional distress under Illinois law.

## COUNT III - NEGLIGENT SUPERVISION

In Count III, Antonson asserts a claim under Illinois law for negligent supervision arising from the alleged failure of United's supervisors to prevent Antonson from being subjected to national origin slurs and associated harassment. United claims that, applying the holdings of the Illinois Supreme Court in *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273 (Ill. 1994) and *Maksimovic v. Tsogalis*, 687 N.E.2d 21 (Ill. 1997) this Court lacks subject matter jurisdiction to hear this claim pursuant to the exclusive remedy provision of the Illinois Human Rights Act (the "IHRA"). That provision states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation." 775 ILCS § 5/8-111(C). In clarifying and narrowing its holding in *Geise*, the *Maksimovic* Court held that, when a plaintiff cannot establish the necessary elements of a tort claim independent of any legal duties created by the IHRA, that claim is inextricably linked to the

alleged civil rights violation. *Maksimovic*, 687 N.E.2d at 24. Thus, when the common law tort claim is inextricably linked to duties created by the IHRA, federal courts exercising supplemental jurisdiction over those claims lack subject matter jurisdiction. In this case, Antonson clearly based his tort claim for negligent supervision on alleged national origin slurs and associated harassment. Equally clear is the fact that United would have no independent duty under Illinois law to prevent its employees from committing national origin harassment if not for the IHRA's prohibition of national origin discrimination. 775 ILCS §§ 5/1-102(A) and 5/2-102(A). Since Antonson's negligent supervision claim is premised solely on his allegations of national origin harassment, the Court holds that the claim is so "inextricably linked" to the alleged civil rights violation as to be preempted by the IHRA. United is therefore entitled to summary judgment on this claim since, as matter of law, the Court lacks subject matter jurisdiction over this claim. *See Ofoma v. Armour*, 1998 WL 409381, at *3 (N.D. Ill. June 25, 1998)(holding that a claim of negligent supervision premised on national origin discrimination was preempted by the IHRA).

## COUNT IV - BREACH OF CONTRACT

Antonson admits in his deposition that he was not a party to any contract with United and that he was not otherwise guaranteed employment for any duration of time. Antonson offers no other

evidence to indicate that he was anything other than an at-will employee under Illinois law. Antonson's claim for breach of contract clearly fails in the absence of any evidence of a contractual relationship between the parties.

### CONCLUSION

For the reasons set forth above, United's Motion for Summary Judgment is granted and the case is dismissed pursuant to FED. R. CIV. P. 56.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: February 12, 2002